**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JOHN SMITH,** | |
| **Plaintiff,** | **Case Number: 1:25-cv-12317** |
| **v.** | |
| **BENTLEY UNIVERSITY,** | |
| **Defendant.** | |

<u>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Bentley University ("University" or "Defendant") submits this memorandum of law in support of its Motion to Dismiss Plaintiff John Smith's[1] Verified Complaint ("Complaint") with prejudice. As set forth below, Plaintiff's Complaint should be dismissed in its entirety, with prejudice, because it fails to state any claim upon which relief can be granted.

Through his Complaint, Plaintiff asserts claims against Defendant for breach of contract and breach of the covenant of good faith and fair dealing. Both of these claims are legally deficient. First, Plaintiff's breach of contract claim fails because it is based on Bentley's Student Handbook, which by its express terms does not constitute a binding contract. Second, Plaintiff fails to sufficiently plead a breach of contract claim because his Complaint fails to point to any specific contractual obligation or reasonable expectation that Defendant allegedly violated. Plaintiff's claim for breach of the covenant of good faith and fair dealing likewise fails for the same reasons.

---

[1] John Smith is a pseudonym.  Plaintiff filed a Motion to Proceed Via Pseudonym, and Defendant has filed its Opposition.  The Motion remains pending before the Court.

Because the Student Handbook expressly disclaims the formation of a contractual relationship, no implied covenant can arise from it. Moreover, Plaintiff has asserted no facts which suggest that the adjudication process was conducted in an unfair, biased, or arbitrary manner. Accordingly, Plaintiff has failed to state any claim upon which relief can be granted. His Complaint and each of his claims should be dismissed in their entirety, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6).

## I.    FACTUAL BACKGROUND[2]

Plaintiff initiated this action by filing his Complaint with this Court on August 19, 2025, asserting the following claims against Defendant: Count One (Breach of Contract) and Count Two (Breach of the Covenant of Good Faith and Fair Dealing). This case arises from the Plaintiff's enrollment as a student and his subsequent expulsion for his own misconduct, which misconduct he does not dispute. *See generally* Complaint. During his enrollment, Plaintiff received an athletic scholarship to play as member of the football team (the "Team") at the University. *See id.* at § 16. Plaintiff was scheduled to graduate from Bentley in May 2025. *See id.* at § 16.

The Plaintiff became aware of a Venmo scheme during his freshman year, in which Venmo transactions would be manipulated so that participants would be able to steal the money being transmitted in these transactions. *See id.* at § 23. Plaintiff was introduced to an individual who was facilitating these improper transactions, known as "Eli," who Plaintiff added to his

---

[2]  To the extent Plaintiff's factual allegations in the Complaint are not premised on a known inaccuracy and/or are not mere conclusory statements, Defendant takes all factual allegations as true for purposes of the instant Motion. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

Snapchat contacts in November 2024. *See id.* at § 23-24. Plaintiff introduced several Team members to Eli who then gave them instructions on the Venmo scheme transactions. *See id.* at § 26-27.

During the first transaction involving the Venmo scheme, Plaintiff made a FaceTime call to Eli while in the presence of Student A. *See id.* at § 28. During the call, Eli told Student A that he would transfer funds to Student A's Venmo account. *See id.* Student A was then instructed to forward the funds to a third party, who would withdraw the money and distribute it according to Eli's predetermined instructions. *See id.* Notably, the final distribution was required to occur through an app other than Venmo. *See id.* Eli explained that he would fund the Venmo transfer using a gift card. *See id.* at § 29. He subsequently transferred $1,750 to Student A via Venmo. *See id.* at § 30. Following Eli's instructions, Student A then sent the $1,750 to another friend through Venmo. *See id.* That friend returned the funds to Eli, who kept $1,050 and sent $700 to the Plaintiff. *See id.* The Plaintiff, in turn, transferred the $700 to Student A. *See id.* For facilitating the introduction to Eli, from which Eli profited improperly, Student A gave the Plaintiff a $50 share of these ill-gotten profits. *See id.* at § 31.

After this initial Venmo scheme transaction, Plaintiff facilitated similar transactions involving other students, Students B, C, D, E, F, and G, wherein he initiated the calls with Eli and participated in the transfer of funds. *See id.* at § 34-38. Eventually, the scheming caught up with the students and Venmo froze Student D's Venmo account because of his transaction with the Plaintiff. *See id.* at § 39. Student E accused Plaintiff of scamming his Venmo account for $4,250 and demanded repayment and eventually reported the Venmo scheme to the police. *See id.* at § 40, 43. On February 28, 2025, Plaintiff was summoned to the Bentley University Police to be questioned regarding the Venmo transactions. *See id.* at § 44.

3

Shortly thereafter, Plaintiff received an interim suspension by the University. *See id.* at §

46-47. The interim notice[3] stated in relevant part:

> **Bentley University Police are actively investigating a serious criminal matter in which you are alleged to have engaged in violations of both University policy and potentially criminal activity. These allegations pertain to financial fraud and remain under investigation.**
>
> Given the gravity of these allegations and considering that you do not have classes today or tomorrow and there are no classes next week, I am imposing an interim administrative action. Effective immediately, you are placed on **interim suspension** from Bentley University.
>
> …
>
> You must vacate campus no later than 10:00 AM today. **This interim suspension is expected to remain in effect until a Level III Student Conduct Board has reviewed and rendered a decision on this matter.** You will receive further updates regarding your status and next steps in the hearing process next week.

*See* **Exhibit A**, *Letter to Plaintiff from Associate Dean Curtis Dugar dated March 6, 2025 ("Interim Suspension Letter")*(emphasis added).

Prior to the Student Conduct Board proceeding, the University provided the Plaintiff with guidance on preparing a written statement and offered to review a draft of the statement. *See* Complaint, § 51. Pursuant to the University's Code of Conduct, the Plaintiff was charged with five violations: complicity, fraud, malicious behavior, failure to uphold the University's core values, and psychological harassment. *See id.* at § 52. The list of charges against the Plaintiff and the

---

[3] Courts routinely consider extrinsic documents relied upon in the Complaint when deciding a motion to dismiss. "The Court may choose to consider extrinsic documents, such as 'documents the authenticity of which are not disputed by the parties; … official public records; … documents central to the plaintiff's claim; [and] … documents sufficiently referred to in the complaint.'" *Chagnon v. Truefort, Inc.*, 772 F. Supp. 3d 198, 206 (D. Mass. 2025) quoting *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013).

other students, along with a detailed outline of the alleged misconduct, was included in the Conduct Board Hearing Packet provided to the Plaintiff on March 21, 2025. *See* Complaint, § 53-54; s*ee also* **Exhibit B**, *Board Hearing Packet*.

Plaintiff emailed his personal statement on March 24, 2025 at 7:50 p.m. and received a response on March 25, 2025 at 2:23 p.m. from the Director of the Office of Student Development, Conduct & Care that highlighted for the Plaintiff that he had included language in his personal statement to suggest that he had violated the terms of his interim suspension by continuing to complete coursework and interacting with faculty during his suspension. *See* Complaint, § 60-64; s*ee also* **Exhibit C**, *Email regarding Personal Statement Pre-Hearing*. Following the hearing, there were communications regarding the personal statement, during which it was explained to the Plaintiff that the statement had not been uploaded because the Plaintiff had not submitted a final version. *See* Complaint, § 80; s*ee also* **Exhibit D***, Email regarding Personal Statement Post-Hearing*. Subsequently, the statement was uploaded in the hearing packet. *See id.*

After the Student Conduct Board hearing was conducted, the Board found the Plaintiff responsible for all charges, as noted in the University's Decision Letter. *See* Complaint, § 74; s*ee also* **Exhibit E**, *Student Conduct Board Hearing Decision Letter* ("Decision Letter"). With respect to the complicity charge, the Conduct Board found the following: "[Plaintiff] admitted to facilitating connections to Eli for all five of the referenced circle scams. Evidence pointed to [Plaintiff] being the one to schedule face time calls, input credit card or numbers into online accounts, and being the consistent conduit to Eli." **Exhibit E***, Decision Letter*, p. 3.

As for the fraud charge, the Conduct Board found the following: "[Plaintiff] admitted financial gain from the scam with [Student], [Student], [Student], [Student] and [Student] all confirmed that [Plaintiff] was the one to outreach first to them about the scam opportunity. The

Board believes based on evidence provided that [Plaintiff] more than likely benefitted financially from more than just the [Student] circle scam." *Id.*

With respect to the malicious behavior charge, the Conduct Board found the following: "[Plaintiff] admitted financial gain from the scam with [Student], [Student], [Student], [Student] and [Student] all confirmed that [Plaintiff] was the one to outreach first to them about the scam opportunity. While [Plaintiff] stated that he did not solicit participation, he clearly announced it when asking if anyone had previously heard about the opportunity. The fact that the majority of victims and/or participants in the scam were younger students (first and second year) demonstrates an egregious lack of care and an intention to take advantage." *Id.*

As to the charge of failing to maintain Bentley core values, the Conduct Board found the following: "[Plaintiff] admitted to the two scams involving [Student] and [Student]. [Plaintiff] was reluctant to take accountability for his actions and the Board believes that he was repeatedly dishonest and consistently withheld information during the hearing, violating the Core Values of Caring, Honesty, and Respect, even beyond his involvement in starting the fraudulent scams." *Id.*

Finally, as for the charge of psychological harassment, the Conduct Board found the following: "The Board felt based on the testimony of [Student] and others aware of the conversation(s) that it is more likely than not that [Plaintiff] was using threatening language and behavior to coerce [Student] not to report the stolen funds." *Id.* at p. 4.

The Board made a decision to expel Plaintiff as a result of these violations. In justifying the decision to expel Plaintiff, the Conduct Board's statement in the Decision Letter read as follows:

> [Plaintiff] had an opportunity to earn the trust of the Board through his actions and statements during the hearing. His perceived lack of honesty, accountability, and remorse, however, have left the Board in a place of distrust. The Board is unanimous in its belief that,

without [Plaintiff], none of the other students would have been involved in this scam, and that it is more likely than not that [Plaintiff]:

- Targeted students with financial vulnerabilities, as well as younger students who had trust in their older teammates
- Received more financial gain than he reported in the hearing
- Instigated and/or facilitated each of the five circle scams
- Caused [Student] significant psychological harm by (i) his lack of response when [Student] tried to reach out to him and (ii) his efforts to try to coerce [Student] not to report the stolen funds

Each item is egregious behavior that is inconsistent with Bentley's Core Values. Being less than forthright at the hearing combined with these findings leaves expulsion as the only appropriate sanction.

*Id.*

Thereafter, the Plaintiff submitted an appeal on the grounds of a failure of fair process and the imposition of undue and disproportionate hardship. *See* Complaint, § 81-85; s*ee also* **Exhibit F**, *Appeal Letter*. On April 22, 2025, Andrew Shepardson ("Dean Shepardson"), Vice President for Student Affairs/Dean of Students, responded to the Plaintiff's appeal upholding the decision of the Conduct Board. *See* Complaint, § 87-88; s*ee also* **Exhibit G**, *Appeal Decision*. In affirming the decision, Dean Shepardson noted that "he carefully reviewed your appeal, your written statement, the materials presented to the board and the board's decision." *Id.* Dean Shepardson found no failure of fair process in the Conduct Board not having the Plaintiff's written opening statement prior to the hearing, noting that its absence did not affect the outcome. The Appeal Decision also noted that the statement was withheld to protect Plaintiff from a potential Board inference that Plaintiff violated given his statements relating to his potential violation of the terms of his interim suspension, that the opening statements of all parties were uploaded after the hearing, and the Plaintiff had full opportunity to present whatever information he wanted, including reading his statement, it during the hearing, and that after which the Board had the written statement of

each party, including the Plaintiff's, to review before reaching rendering a final decision. *See id.*

In the Appeal Decision, Dean Shepardson also refuted Plaintiff's argument that the Decision Letter contained factual inaccuracies, noting that the Board's decision was based on the information available and mere disagreement with the findings does not constitute a failure of process. *See id.* As for the difference in sanctions among the students involved in the Venmo scheme wherein the other Venmo participants were not subject to interim suspension and expulsion, Dean Shepardson explained that sanctions were determined individually, and the Plaintiff's greater level of involvement warranted a more severe sanction. *See id.* Finally, Dean Shepardson concluded that the decision to expel the Plaintiff, even though he was in his last semester, was appropriate given the facts of the case. *See id.*

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). This "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). The Court is not obliged to "honor subjective characterizations, optimistic predictions, or problematic suppositions …." *Id.*

Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st

Cir. 1997) (quotation and citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief'" and the complaint must therefore be dismissed. *Iqbal*, 556 U.S. at 678 (citing Fed. R. Civ. P. 8(a)). As discussed below, Plaintiff's threadbare allegations do not rise to the level that would permit even an inference of a mere possibility of misconduct, and his claims must therefore be dismissed.

## III.    **ARGUMENT**

### A.  **Plaintiff's Breach of Contract Claim Fails**

The Court should dismiss Plaintiff's breach of contract claim because: 1) the University's *Student Handbook* is not a contract and 2) Plaintiff fails to sufficiently plead a claim for breach of contract because he is unable to point to any contractual promise or reasonable expectations violated by Defendant arising out of a supposed contract.

#### i.    **No Contract Existed between Plaintiff and Defendant**

"To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Finnegan v. Massachusetts Coll. of Pharmacy & Health Scis. by & through Bd. of Trs.*, No. 23-CV-12997-DJC, 2024 WL 4772299, at *7 (D. Mass. Nov. 13, 2024) (internal quotations and citations

9

omitted). Massachusetts courts recognize that, in limited circumstances, a contractual relationship

between a student and a university can be derived from sources such as handbooks, policy manuals,

brochures, catalogs, advertisements, and other promotional materials. *See Govan v. Trs. of Bos.

Univ.*, 66 F. Supp. 2d 74, 82 (D. Mass. 1999); *Guckenberger v. Bos. Univ.*, 974 F. Supp. 106, 150

(D. Mass. 1997). If a contract is established, the Court reviews a breach of contract claim by

examining the terms of the contract between the university and the student and determining

whether the reasonable expectations of the parties have been met. *See Finnegan*, 2024 WL

4772299, at *7.* In support of the breach of contract claim, the Plaintiff asserts that the Defendant

committed multiple violations of the Conduct Process outlined in the Student Handbook.

However, Plaintiff's reliance on the Conduct Process is fundamentally misplaced, as the

Student Handbook cannot establish a contract due to an express disclaimer contained within it.

The Student Handbook clearly states, as shown below, that it is **not** a contract:

> The Bentley University Board of Trustees reserves the right to modify or amend curricula, and change or modify aspects of university operations, as well as increase tuition and other charges without notice. Policies and regulations may be amended from time to time by action of the responsible bodies or persons without notice. The information contained in this student handbook was complete and accurate as of August 2024. Changes will be sent directly to students via email. **This handbook is not intended to be, and is not, a contract between the university and its students.**

S*ee* **Exhibit H**, *Bentley Handbook: 2024 - 2025*, p. 11 (emphasis in original). Furthermore, the

Plaintiff had no bargaining power over the Handbook's terms and did not negotiate them; nor is

there any record of the Plaintiff signing the Handbook or otherwise manifesting assent to its terms.

Accordingly, the Student Handbook does not constitute a contract, and there can be no breach of

contract.

This Court recently confronted nearly identical facts in *Finnegan*, where it dismissed a breach of contract claim based on a student handbook that, like the one at issue here, contained an express disclaimer stating it was not a contract. *See Finnegan*, 2024 WL 4772299, at *7 (*observing "Courts have held that where there is an express disclaimer in a student handbook or catalog in which the University retains unilateral rights to make changes without notice, any promises premised on that document are rendered illusory"); *Pacella v. Tufts Univ. Sch. of Dental Med.*, 66 F. Supp. 2d 234, 241 (D. Mass. 1999) (holding that the student handbook terms were not contractually binding because the express disclaimer in the student handbook permitted the school to make unilateral changes);   *Compare Englund v. Big Y Foods, Inc.*, 98 Mass. App. Ct. 1102 (2020) (finding that an employee handbook was not a contract where it contained a prominent, unambiguous disclaimer), with *O'Brien v. New England Tel. & Tel. Co.*, 422 Mass. 686, 691, 664 N.E.2d 843, 847 (1996) (finding that, because the personnel manual contained no disclaimer or reservation of rights, it created a contractual obligation for the employer to treat employees in accordance with its provisions).

### ii.    Plaintiff is unable to point to any reasonable expectations violated by Defendant arising out of a supposed contract.

Plaintiff also fails to state a claim for breach of contract because he cannot identify any specific contractual promise or reasonable expectation that Defendant violated. Under Massachusetts law, it is "essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020) (internal quotation and citations omitted).

To the extent Plaintiff attempts to base his breach of contract claim on the Conduct Process within the Student Handbook—which cannot, as a matter of law, form an enforceable contract, as noted above—he alleges that Defendant breached its "contract" with him as follows: (1) by

11

imposing an interim suspension; (2) by failing to provide adequate notice of the "psychological harassment" charge; (3) by withholding Plaintiff's written statement from the Conduct Board; (4) by imposing an unduly harsh sanction; (5) by failing to record the hearing; and (6) by denying Plaintiff's appeal. *See* Complaint, § 95-115.

Each of Plaintiff's arguments fail based on the undisputed record. With respect to the first category, Plaintiff's interim suspension was appropriate under the circumstances and expressly authorized by the Student Handbook. The Student Handbook states the following:

> **In cases where the Dean of Student Affairs or their designee has a reasonable belief that an individual has engaged in a serious violation of university rules, regulations, policies and procedures and/or federal, state or local law, the Vice President or a designee may impose any sanction on the student, which will remain in effect until the completion of the conduct hearing process and all appeals.** In the event that a student violates the imposed sanctions prior to the completion of the conduct hearing process and all appeals, the Vice President or a designee may impose a permanent sanction on the student.

S*ee* **Exhibit H**, *Bentley Handbook: 2024 - 2025*, p. 78 (emphasis added). As previously noted, when the interim suspension was issued on March 6, 2025, a student had already reported Plaintiff and the Venmo scheme to the police, and Plaintiff had already been interviewed by law enforcement. The interim suspension letter stated that the police were investigating allegations of financial fraud, and, accordingly, there was a reasonable basis to believe that Plaintiff had engaged in a serious violation of university rules and/or the law. *See* **Exhibit A**, *Interim Suspension Letter*.

With respect to the remaining categories, Plaintiff essentially alleges that he was denied a fair hearing under the Conduct Process outlined in the Student Handbook. However, the Student Handbook expressly provides, in relevant part, as follows:

> **While the Student Conduct Board is charged with hearing all the facts in each case and reviewing them impartially, its procedures are not bound by formal rules of evidence or**

> **necessarily strict presumption of innocence.** The Student Conduct Board is responsible for determining the validity of the alleged violations brought against a student and taking appropriate action.

S*ee* **Exhibit H**, *Bentley Handbook: 2024 - 2025*, p. 88 (emphasis added). Further, the Student Handbook provides the following Students' Rights in a Student Conduct Board Hearing:

> **Students referred to any Student Conduct Board are entitled to:**
>
> • **A fair hearing** with a reasonable amount of time from the referral.
> • Ample notice of the hearing, **a summary of the violation to be discussed and an explanation of the conduct process**.
> • **The opportunity to speak on their own behalf.**
> • **The opportunity to hear all evidence presented in the hearing.**
> • **The opportunity to respond to all evidence presented in the hearing.**
> • **Present material witnesses to give relevant and pertinent testimony** (witnesses must be reviewed by the Office of Student Development, Conduct and Care prior to the hearing).
> • **The presence of one person to give support** (with prior approval from the Office of Student Development, Conduct and Care). The Support Person invited by the student is prohibited from taking part in any dialogue during the hearing. Their communication is limited to private conversations with the student for whom they are providing support. Private conversations must not disrupt the proceedings. The Student Conduct Board has the right to stop the proceeding or remove the Support Person if his or her presence interferes with the activities of the hearing body.
> • **Written notice within a reasonable amount of time notifying the student of the Conduct Board's findings and, if appropriate, sanctions**.
> • **The opportunity to appeal** the decision of the Conduct Board.

*See id.* at p. 89.  As noted below, Plaintiff has failed to set forth any basis for a breach of contract with respect to the Conduct Process outlined in the Student Handbook.

As for the second category, Plaintiff was provided adequate notice of the "psychological harassment" charge. On March 21, 2025, he received the hearing packet, which included University Police Report No. 25-000106, supplemental screenshots and photographs, and a document listing the charges against him along with relevant definitions—including the definition

13

of psychological harassment. S*ee* **Exhibit B**, *Board Hearing Packet*; **Exhibit I**, *Charges and Definitions*.

Moreover, there is no basis to conclude that the remaining categories support a breach of contract claim, as the majority of these issues were thoroughly addressed in the Appeal Decision, as previously noted. As for the Plaintiff's allegations based on the timing of his personal statement being shared with the Conduct Board, Dean Shepardson acutely noted in the Appeal Decision the following:

> I do not find that the Board not having your opening statement in writing was a failure of fair process, and most importantly, I do not find that if the Board had the document their decision would have been any different. The reason for not submitting the statement to Board prior to the hearing was to protect you, as the Board could have inferred from the original statement that you violated your interim suspension, which you did not. All parties were treated equally and all opening statements were uploaded after the hearing. You had the opportunity to say all you wanted to, including reading the statement, at the time of the hearing. The Board had your written statement to review before they rendered a final decision.

*See* **Exhibit G**, *Appeal Decision*.   Accordingly, the timing of his statement's submission to the Conduct Board cannot support a breach of contract claim.

Similarly, Plaintiff's allegation that Defendant imposed an unduly harsh sanction is insufficient to support a breach of contract claim. With respect to disciplinary sanctions, the Handbook provides, in relevant part, the following:

> **Sanctions are intended to provide accountability for the students** while balancing the Office of Student Development, Conduct and Care's restorative philosophy, which is to provide educational and reflective opportunities.
>
> **When determining sanctions, the following factors are considered**: seriousness of the responsible violations, conduct history of the student and information shared during the conduct process (frequency of behavior + severity of behavior = sanction).

14

…

> These sanctions are listed in a hierarchy order with written warning being the least severe sanction and expulsion being the most severe sanction. The Student Conduct System is not based on a "strike" method. **Although these sanctions can build upon each other, a student can be placed on any of these sanctions at any time based on the severity of behavior, regardless of prior history.**

S*ee* **Exhibit H**, *Bentley Handbook: 2024 - 2025*, p. 91 (emphasis added). As detailed in the Decision Letter and above, the Board concluded that Plaintiff was responsible for violations including complicity, fraud, malicious behavior, failure to uphold the University's core values, and psychological harassment, and set forth the reasoning supporting each determination. *See* **Exhibit E**, *Decision Letter*, p. 3-4. It is undisputed that Plaintiff both participated in and recruited others into the Venmo scheme, including several of his teammates. The undisputed record is clear that Plaintiff's central involvement, rather than any consideration of future athletic participation, was the primary factor distinguishing his sanction of expulsion from the sanctions received by other students involved in the misconduct. Other factors, as noted in the Decision Letter, included Plaintiff's targeting of younger and financially vulnerable students, the Board's conclusion that Plaintiff withheld information regarding and downplayed the extent of his financial gains from the Venmo scam during the hearing, and the significant psychological harm he inflicted on the student who threatened to report him. *See id.* at p.4.  Based on these facts, there is no evidence to establish a breach of any contractual promise or reasonable expectation Plaintiff could have held based on the Handbook.

Lastly, Plaintiff's allegations that Defendant failed to record the hearing and wrongfully denied his appeal fail to state a valid breach of contract claim. First, there is no requirement for Defendants to make a visual or audio recording of the Conduct Board hearing. On the contrary, the Handbook specifically states: "no recordings of hearings are allowed." S*ee* **Exhibit H**, *Bentley*

15

*Handbook: 2024 - 2025*, p. 89. With respect to the appeal, Plaintiff was afforded a full opportunity to appeal the Conduct Board's findings. As reflected in the Appeal Decision, his appeal was thoroughly reviewed, and the reasons for its denial were clearly articulated. *See* **Exhibit G**, *Appeal Decision*.

In sum, Plaintiff cannot point to any reasonable expectation or enforceable contractual obligation that Defendant allegedly breached. Accordingly, his breach of contract claim fails as a matter of law.

### B.  Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Fails

In the Complaint, Plaintiff appears to ground his claim for breach of the implied covenant of good faith and fair dealing on an alleged denial of "basic fairness," relying on the general principle that every contract contains such an implied covenant. *See* Complaint §§ 119–121. However, "[t]he implied covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 612 (D. Mass. 2016).  "In determining whether the covenant of good faith and fair dealing was breached, courts use the same analysis as in a breach of contract and look to the reasonable expectations of the parties." *See Finnegan*, 2024 WL 4772299, at *10 Establishing a violation of the covenant of good faith and fair dealing requires at least bad faith conduct. *Sonoran Scanners, Inc. v. Perkinelmer, Inc*., 585 F.3d 535, 541 (1st Cir. 2009).

To the extent this claim is based on the Student Handbook as a contractual document, it fails for the same reasons outlined above in connection with Plaintiff's breach of contract claim. Because the Student Handbook expressly disclaims the formation of a contract, there can be no implied covenant arising from it. *See Finnegan*, 2024 WL 4772299, at *10 (holding that "the Handbook did not create a contractual relationship and, therefore, [the plaintiff] has not alleged

plausible facts that [the defendant] violated any contract, and he cannot establish a claim based on a violation of an implied covenant of good faith and fair dealing of same"); *see also Doe v. Town of N. Andover*, 2023 WL 3481494, at \*14 (D. Mass. May 16, 2023) (explaining that a claim for denial of basic fairness "tracks the contract argument" and must also fail where no enforceable contract exists).

Notwithstanding the foregoing, Plaintiff's Complaint sets forth no allegations which could establish that the adjudication process was unfair, biased, or arbitrary. On the contrary, the record shows that sanctions were imposed based on individualized determinations, and Plaintiff's more serious sanction reflected his greater level of involvement as the ringleader of the Venmo scheme. *See also Berkowitz v. President & Fellows of Harvard Coll.*, 58 Mass. App. Ct. 262, 269 (2003) ("[I]n the absence of a violation of a reasonable expectation created by the contract, or arbitrary and capricious conduct by the university, courts are not to intrude into university decision-making.").

IV. **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss should be *allowed,* and his Complaint dismissed with prejudice.

WHEREFORE, Defendant respectfully requests that this Honorable Court *allow* its Motion to Dismiss, with prejudice, and dismiss all counts from Plaintiff's Complaint as a matter of law.

Respectfully submitted,

BENTLEY UNIVERSITY,

By its Attorneys,


*/s/ Gregory A. Manousos*
Gregory A. Manousos (BBO #631455)
Jennawe M. Hughes (BBO #698667)
**MORGAN, BROWN & JOY, LLP**
28 State Street, 16th Floor
Boston, MA  02109
(617) 523-6666
gmanousos@morganbrown.com
jhughes@morganbrown.com



Dated:  October 20, 2025



## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), the undersigned hereby certifies that she spoke with Plaintiff's counsel on October 20, 2025 regarding the relief sought within this motion.  The parties attempted in good faith to resolve or narrow the issues and that attempt was unsuccessful.


*/s/ Jennawe M. Hughes*
Jennawe M. Hughes

18

## CERTIFICATE OF SERVICE

I, Gregory A. Manousos, hereby certify that on October 20, 2025, a copy of the foregoing document, filed through the ECF system, will be served on all parties as provided by the Notice of Electronic Filing (NEF).

/s/ Gregory A. Manousos
Gregory A. Manousos

19