UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SMITH, </br></br> Plaintiff, </br></br> v. </br></br> BENTLEY UNIVERSITY, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 25-CV-12317-AK </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTIONS TO PROCEED PSEUDONYMOUSLY AND TO SEAL**

**ANGEL KELLEY, D.J.**

Plaintiff seeks leave to proceed under a pseudonym in a challenge to Bentley University's (the "University") disciplinary decision expelling him and moves to file under seal an affidavit identifying his true name and a list of other students allegedly involved in the underlying events. [Dkts. 2, 11]. Plaintiff contends that anonymity and sealing are warranted to protect student privacy interests and to avoid chilling similarly situated students from bringing claims. [Id.]. Plaintiff has provided his identity and the list of students to University counsel. [Dkt. 11]. For the reasons below, Plaintiff's Motion to Proceed Pseudonymously [Dkt. 2] and Motion to File Affidavit of Identity and List of Students Under Seal [Dkt. 11] are **GRANTED**.

**I.    BACKGROUND**

Plaintiff was a student and a member of the University's athletics program. The Complaint alleges that a peer-to-peer payment scheme circulated among students, including student athletes, and that Plaintiff was investigated and disciplined in connection with that scheme. Plaintiff was summoned for questioning, placed on interim suspension, and required to

1

vacate campus pending resolution.

Plaintiff was charged under the Student Handbook with multiple violations. He met with the student conduct office, submitted a written statement, and alleges that the statement was not included in the hearing materials until after the hearing. The hearing was not recorded. Plaintiff alleges that the absence of his written statement affected the hearing body's assessment of his credibility. Plaintiff further alleges that multiple students received discipline in connection with the scheme, but that he alone was expelled while others received lesser sanctions. He appealed administratively and was denied relief.

Plaintiff filed this action asserting breach of contract and breach of the implied covenant of good faith and fair dealing, alleging among other things that the University failed to provide his written statement to the hearing body, imposed an interim suspension without adequate investigation, failed to give adequate notice of the harassment charge, did not record the hearing, and imposed a disproportionate sanction. [Dkt. 2]. Plaintiff alleges resulting emotional, reputational, and economic harms, including loss of educational opportunities. Id. The University opposes the request to proceed pseudonymously and has filed a motion to dismiss. [Dkts. 12, 15].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name all parties, reflecting the presumption of public access to judicial proceedings. The First Circuit recognizes a strong presumption against pseudonymous litigation and permits anonymity only in "exceptional cases," requiring a clear, case specific justification before departing from Rule 10(a). Doe v. Mass. Inst. of Tech. ("MIT"), 46 F.4th 61, 68, 70 (1st Cir. 2022). Courts evaluate requests to proceed under a pseudonym by balancing the public's right of access against the

movant's privacy or safety interests and consider the totality of the circumstances.  See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572 (1980); see also Doe v. Town of Lisbon, 78 F.4th 38, 46 (1st Cir. 2023); Doe v. Bell Atl. Bus. Sys. Servs., Inc., 162 F.R.D. 418, 420 (D. Mass. 1995)); Thomas v. Arn, 474 U.S. 140, 147 n.5 (1985)).  In MIT, the First Circuit identified four illustrative paradigms in which anonymity ordinarily will be warranted: (1) identification would cause unusually severe physical or psychological harm; (2) identification would harm innocent nonparties; (3) identification would chill similarly situated litigants; and (4) the suit is bound up with a prior proceeding made confidential by law.  46 F.4th at 71.  If anonymity is permitted, any order must be narrowly tailored in scope and duration, with on-the-record findings explaining the basis for the decision.  Id. at 71–72.

## III.  DISCUSSION

The Court evaluates Plaintiff's request under the First Circuit's framework and the totality of the circumstances.  Two of the MIT paradigms are implicated and, on balance, limited pseudonymous treatment is appropriate at this early stage.  See MIT, 46 F.4th 61, 72 (1st Cir. 2022) (noting that anonymity may be appropriate when multiple paradigms are implicated even if each, standing alone, is not dispositive).

### A.  Severe Harm

The first MIT paradigm applies where a would-be Doe "reasonably fears that coming out of the shadows will cause him unusually severe harm."  46 F.4th at 71.  Ordinary reputational injury, embarrassment, or economic loss do not meet that standard.  See Doe v. Word of Life Fellowship, Inc., No. 11-40077-TSH, 2011 WL 2968912, at *2 (D. Mass. July 18, 2011); Doe v. Bell Atl. Bus. Sys. Servs., Inc., 162 F.R.D. 418, 420 (D. Mass. 1995).  The First Circuit has recognized that this paradigm is satisfied where disclosure would expose a litigant to a

particularized risk of extreme physical danger, deportation, criminal exposure, or debilitating psychological injury distinct from ordinary litigation stress.  See MIT, 46 F.4th at 71–72.

Plaintiff asserts reputational injury, diminished employment and educational prospects, psychological distress, if identified.  The University correctly notes that ordinary reputational injury and economic loss do not meet the "unusually severe" threshold.  See Word of Life Fellowship, 2011 WL 2968912, at *2; Bell Atl., 162 F.R.D. at 420.  On the present record, given Plaintiff's admitted participation in the transactions at issue and the absence of evidence of a particularized risk of physical danger or debilitating psychological injury, the first MIT paradigm is not satisfied.

### B. Harm to Innocent Nonparties

The second MIT paradigm encompasses cases "in which identifying the would-be Doe would harm 'innocent non-parties.'"  46 F.4th at 71.  Nonparties often have a strong claim to privacy, and courts should weigh the likelihood and severity of harm to identifiable nonparties when considering pseudonymity.  See Doe v. Trs. of Bos. Coll., 892 F.3d 67, 78–79 (1st Cir. 2018) (recognizing nonparty privacy interests in the student discipline context.

Here, disclosure of Plaintiff's identity would materially narrow the universe of potential participants in the alleged scheme because the relevant cohort is a discrete group associated with campus athletics.  That narrowing increases the risk that teammates or other students who did not consent to litigation or who may have been victims would be identified or subjected to damaging speculation.  Balancing the competing interests and tailoring relief narrowly, the Court concludes that disclosure of Plaintiff's identity would pose a real and appreciable risk of harm to innocent nonparties.  The second MIT paradigm therefore supports pseudonymous treatment at this stage.

### C. Chilling Effect on Future Litigants

The third MIT paradigm asks whether compelled identification would "likely deter, to an unacceptable degree, similarly situated individuals from litigating." 46 F.4th at 71. Deterrence concerns most commonly arise in cases involving intimate matters, criminal exposure, or where disclosure itself would cause the injury at issue. Id.; see also Town of Lisbon, 78 F.4th at 46.

The record here centers on a peer-to-peer financial scheme and does not present the intimate, stigmatizing, or criminal exposure contexts that most commonly justify anonymity on deterrence grounds. Plaintiff has not identified a cognizable class of potential litigants who would be uniquely deterred by disclosure. The third MIT paradigm is therefore not satisfied on the present record.

### D. Confidentiality of Prior Proceedings

The fourth MIT paradigm applies where a federal suit is "bound up with a prior proceeding made confidential by law," such that denying anonymity in the new suit would "significantly impinge upon the interests served by keeping the prior proceeding confidential." 46 F.4th at 72; see also Town of Lisbon, 78 F.4th at 46. The Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, generally restricts disclosure of education records and student disciplinary records and reflects a congressional judgment that schools should not unilaterally disclose certain student information. See 20 U.S.C. § 1232g. FERPA permits limited disclosures in litigation contexts, for example, in response to a court order or subpoena under specified conditions. See 34 C.F.R. § 99.31(a)(9)(iii)(B). The First Circuit has instructed that courts must account for the "background confidentiality regime" when assessing requests for pseudonymity, but that confidentiality is only one factor in the balancing test and does not automatically require anonymity. MIT, 46 F.4th at 74, 76.

Plaintiff invokes FERPA and the University's Handbook confidentiality provisions, arguing that this federal suit is bound up with a prior proceeding made confidential by law. The University correctly observes that FERPA and institutional policies do not automatically entitle a litigant to proceed anonymously. Confidentiality is a factor to be weighed, not a dispositive rule. This litigation arises from a university disciplinary process and thus implicates the background confidentiality regime. FERPA and the University handbook weigh in favor of protecting privacy interests in the adjudicative record and counsel caution before exposing student discipline materials to public view. At the same time, FERPA permits limited disclosures in litigation and does not by itself mandate anonymity for a plaintiff who has chosen to bring a public lawsuit. The fourth <u>MIT</u> paradigm is therefore implicated here but is not independently dispositive.

### E. Balancing and Scope of Relief

Weighing the public's interest in open proceedings and the University's interest in a fair defense against the privacy interests at stake, the Court concludes that limited pseudonymous treatment is appropriate at this early stage. The second <u>MIT</u> paradigm (risk of harm to innocent nonparties) carries particular weight given the small, identifiable cohort implicated by the Complaint. The fourth <u>MIT</u> paradigm (background confidentiality under FERPA and the University Handbook) also favors protective measures. The first and third paradigms are not satisfied on the present record. Accordingly, the Court will permit Plaintiff to proceed under a pseudonym at this time.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's Motion to Proceed Pseudonymously [Dkt. 2] and Motion to File Affidavit of Identity and List of Students Under Seal [Dkt. 11] are

**GRANTED**.  The affidavit identifying Plaintiff's true name and the list of students shall remain under seal and shall be accessible only to the Court and counsel of record until further order of the Court.  Public filings shall refer to Plaintiff only by pseudonym and shall omit any information that would permit ready identification of Plaintiff or other students (including but not limited to full names, student identification numbers, and social media handles).  The parties may move to modify or vacate this Order should change in circumstances warrant it.

    **SO ORDERED**.

Dated: January 26, 2026                                                 /s/ Angel Kelley
                                                                                                      Hon. Angel Kelley
                                                                                                      United States District Judge