UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN SMITH, | ) ) ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:25-CV-12317-AK |
| BENTLEY UNIVERSITY, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFF'S MOTION TO STRIKE

**ANGEL KELLEY, D.J.**

Plaintiff John Smith, proceeding pseudonymously, brings breach of contract claims

against Defendant Bentley University, challenging the school's decision to expel him following

his alleged participation in a scheme to fraudulently obtain funds from Venmo, a peer-to-peer

payment platform. [Dkt. 1]. Pending before the Court is Bentley's Motion to Dismiss for failure

to state a claim [Dkt. 15] and Plaintiff's Motions to Strike various exhibits attached to Bentley's

Motion and Reply [Dkts. 19; 31]. For the reasons below, Plaintiff's Motions to Strike are

**GRANTED IN PART** and **DENIED IN PART**, and Bentley's Motion to Dismiss is

**GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and assumed as

true for purposes of this Order. Plaintiff matriculated at Bentley University as a student athlete in

Fall 2021. [Dkt. 1 ¶¶ 16, 18, 19]. During his first year, Plaintiff heard rumors that his team

captains had profited from a scheme on Venmo. [Id. ¶ 23]. An individual using the moniker

1

"Eli" facilitated the scheme. [Id. ¶ 25].  In November 2024, Eli added Plaintiff to his contacts on social media and posted content regarding the scheme. [Id. ¶ 24].  After viewing the posts, Plaintiff introduced some of his teammates to Eli through group video calls. [See id. ¶¶ 23-38]. During these calls, Eli instructed the students on how to manipulate Venmo transactions to obtain funds. [See id.].  Plaintiff facilitated these meetings with Eli and at least eight students across five transactions, with amounts up to several thousand dollars. [See id.].

The scheme did not last long.  On or around December 2024, one of the students informed Plaintiff that his Venmo account had been frozen. [Id. ¶ 39].  Shortly after, on February 27, 2025, another student, identified in the Complaint as "Student E," confronted Plaintiff, accusing him of defrauding him of $4,250 and demanding repayment. [Id. ¶¶ 40-43].  Plaintiff alleges that he responded that he had nothing to do with the scam, did not know what was going on, and walked away. [Id. ¶ 71].  The student reported Plaintiff to the Bentley University Police the next day, who summoned Plaintiff for questioning regarding the Venmo transactions. [See id. ¶¶ 40-44].  On March 5, 2025, Plaintiff received an interim suspension notice. [Id. ¶¶ 45-46].

On March 18, 2025, Plaintiff received notice that the Bentley University Student Conduct Board ("Board") would schedule a student conduct hearing; the hearing was later scheduled for March 27, 2025. [Id. ¶ 51, 58].  Several days later, he received a pre-hearing packet, which listed the alleged violators and their respective charges and a timeline of events. [Id. ¶¶ 52-53; Dkt. 16-2].  Plaintiff's five charges were complicity, fraud, malicious behavior, failing to maintain the Bentley University core values, and psychological harassment. [Dkt. 1 ¶¶ 52-53].  The pre-hearing packet only listed the charges and did not describe which events or actions allegedly comprised each charge. [See Dkt. 16-2].  Five other students were listed as alleged violators, though only Plaintiff and one other student were charged with psychological harassment. [Id.].

Moreover, psychological harassment was the only charge lodged against Plaintiff that permitted a sanction of suspension or expulsion. [Dkt. 1 ¶¶ 56-57]. "Psychological harassment" is defined in the Bentley University Student Handbook ("Handbook") as "behavior that represents bullying, undermining a person's sense of self-worth or self-esteem, constant criticism, possessiveness, damaging possessions, blackmailing, coercion, threats, intimidation, diminishing a person's abilities, name-calling, public humiliation, and damaging a person's relationship with others." [Id. ¶ 55].

The hearing was held on March 27, 2025. [Id. ¶ 58]. Plaintiff began by presenting an opening statement. [Id. ¶ 66]. Several days prior, Plaintiff submitted a written statement for the Board's review in advance of the hearing. [Id. ¶¶ 59-60]. Due to a miscommunication between the Parties and without Plaintiff's knowledge, Plaintiff's written statement was not submitted to the Board until after the hearing. [Id. ¶¶ 61-65]. Believing that the Board had read his written statement's detailed description of events, Plaintiff gave a brief and undetailed opening statement. [Id. ¶ 66]. Witnesses then testified to Plaintiff's alleged actions. As relevant to the psychological harassment charge, Student E testified regarding his encounter with Plaintiff on February 27, 2025. [Id. ¶ 71]. He stated that Plaintiff had never threatened him, that Plaintiff refused to engage with him about the Venmo transactions, and that Plaintiff responded that he was not involved with and had no knowledge of the scheme. [Id.].

Following the hearing, the Board found Plaintiff responsible for all charges and ordered his expulsion. [Id. ¶¶ 74-75]. On the psychological harassment charge, the Board found that, "based on the testimony of [Student E] and others aware of the conversation(s) it is more likely than not that [Plaintiff] was using threatening language and behavior to coerce [Student E] not to report the stolen funds." [Dkt. 16-5 at 4-5]. The Board further explained that Plaintiff

"[c]aused . . . significant psychological harm by (i) his lack of response when [Student E] tried to reach out to him and (ii) his efforts to try to coerce [Student E] not to report the stolen funds." [Id.].  The Board further opined that Plaintiff exhibited "lack of honesty, accountability, and remorse." [Id.].  Of the other five students, the Board suspended one student and placed the remaining students on academic probation. [Dkt. 1 ¶ 78].  Plaintiff appealed the decision to the Dean of Bentley University, arguing lack of fair process and undue hardship. [Id. ¶ 81].  The Dean denied the appeal. [Id. ¶ 87].

On August 19, 2025, Plaintiff initiated this action, asserting breach of contract and breach of the covenant of good faith and fair dealing.  Defendant moves to dismiss for failure to state a claim, attaching nine exhibits, of which Plaintiff moves to strike eight.  Plaintiff separately moves to strike Exhibit J of Defendant's Reply.  The Court heard oral argument from the parties on the pending Motions on June 24, 2026. [Dkt. 32].

## II.    MOTIONS TO STRIKE

Because the record before the Court bears on the Rule 12(b)(6) analysis, the Court first addresses Plaintiff's Motion to Strike Exhibits A, B, C, D,[1] E, F, G, and I of Defendant's Motion to Dismiss, as well as Plaintiff's Motion to Strike Exhibit J of Defendant's Reply.  In considering a motion to dismiss, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion [to dismiss] is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Courts recognize several "narrow" exceptions to this rule, including when the complaint relies upon a

---

[1] Defendant represents that it initially agreed to strike Exhibit D but has since changed its position. [Dkt. 24 at 5].

document, the document's authenticity is not challenged, and it is integral to the plaintiff's claims. Alternative Energy, 267 F.3d at 33 (quoting Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998)); Bangor Daily News v. Quinlan, 32 F.4th 15 (1st Cir. 2022).

The Court strikes Exhibit J to Defendant's Reply, which contains a Bentley University Police Department police report detailing the investigation of the incident.  The Complaint does not cite, reference, nor rely on the police report, and the report is not integral to Plaintiff's breach-of-contract or covenant-of-good-faith claims, as it does not bear on the issues of notice or the Conduct Board's correspondence or interactions with Plaintiff.  Accordingly, the Exhibit is not properly before the Court at this stage.

The Court also strikes Exhibits C and D to Defendant's Motion to Dismiss, which contain emails between Plaintiff and the Conduct Board regarding uploading his written statement prior to the conduct hearing.  While the Complaint references and relies on the emails to some extent, they are not integral to Plaintiff's claims.  Plaintiff advances multiple theories in support of his breach-of-contract and basic fairness claims, only one of which involves the Conduct Board's failure to upload his written statement.  Moreover, during oral argument, Plaintiff explained that Exhibits C and D omit related email exchanges, risking creating a misleading impression of events. [See also Dkt. 1 ¶ 64].  Under these facts, the Court finds that consideration of the Exhibits would not be appropriate at this stage and strikes them from consideration.

The remaining Exhibits attached to Defendant's Motion to Dismiss fall within the exception and therefore are properly considered part of the pleadings.  Plaintiff does not challenge the Exhibits' authenticity,[2] the Complaint relies on the documents, and the documents

---

[2] Although Plaintiff disputes the factual allegations in the documents, the concern is immaterial because the Court may consider the documents only for the fact that they contain certain information, not for the truth of their contents. See OrbusNeich Med. Co. v. Bos. Sci. Corp., 694

are integral to Plaintiff's claims. See Blay v. Zipcar, 716 F. Supp. 2d 115, 118-19 (D. Mass. 2010). For example, Plaintiff quotes from and refers to Exhibit A (interim suspension letter), Exhibit B (pre-hearing packet), and Exhibit I (list of charges against Plaintiff) in his lack-of-notice arguments, where he explains that these documents failed to include a description of the actions underlying his five charges. Plaintiff likewise relies on Exhibit E (Board decision letter), Exhibit F (appeal letter), and Exhibit G (appeal decision) in his breach-of-contract allegations, where he explains that the reasoning in the decision letter and appeal decision was insufficiently supported by evidence. Accordingly, these Exhibits are properly before the Court.

In sum, the Court strikes Exhibits C and D from Defendant's Motion to Dismiss[3] and Exhibit J from Defendant's Reply. The Court declines to strike Exhibits A, B, E, F, G, and I from Defendant's Motion to Dismiss.

### III.    MOTION TO DISMISS

Defendant moves to dismiss both claims in the Complaint—breach of contract (Count 1) and breach of the covenant of good faith and fair dealing (Count 2)—for failure to state a claim. When evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1,

---

F. Supp. 2d 106, 111 (D. Mass. 2010).

[3] To the extent Defendant attached these same Exhibits to its Reply, they are also struck.

12 (1st Cir. 2011).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citation omitted).  A court may not disregard properly pleaded factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556).  Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.  In making that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein, and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

### A.    Count 1: Breach of Contract

Plaintiff first asserts that the Board failed to follow the Handbook's disciplinary hearing procedures.  The Handbook requires, *inter alia*, a "fair hearing," "ample notice" with "a summary of the violation to be discussed," and adherence to principles of restorative justice. [Dkt. 1 ¶¶ 96-102].  Defendant argues that these terms are not enforceable because the Handbook contains a disclaimer precluding the formation of a contract.  The Court agrees with Defendant.

As this action arises under diversity jurisdiction, Massachusetts law applies to Plaintiff's state contract law claims. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  Under Massachusetts law, the elements of a breach of contract claim are: (1) the parties entered an agreement supported by consideration, (2) the defendant committed a breach; and (3) the plaintiff suffered harm as a result. See Squeri v. Mount Ida Coll., 954 F.3d 56, 71 (1st Cir. 2020). The First Circuit has recognized that "[t]he student-college relationship is essentially contractual in nature." Mangla v. Brown Univ., 135 F.3d 80, 83 (1st Cir. 1998).  The terms of a student-university contract "can be derived from statements in handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials." Guckenberger v. Bos. Univ., 974 F.

Supp. 106, 150 (D. Mass. 1997); see Russell v. Salve Regina Coll., 890 F.2d 484, 488 (1st Cir. 1989), rev'd on other grounds, 499 U.S. 225 (1991), and reinstated on remand, 938 F.2d 315 (1st Cir. 1991).  However, when a handbook clearly and conspicuously disclaims an intention to enter a contract, promises within the handbook are illusory and thus unenforceable. E.g., Durbeck v. Suffolk Univ., 547 F. Supp. 3d 133, 147 (D. Mass. 2021); Jackson v. Action for Bos. Cmty. Dev., Inc., 403 Mass. 8, 14-15 (1988); Pacella v. Tufts Univ. Sch. of Dental Med., 66 F. Supp. 2d 234, 241 (D. Mass. 1999); Sylvain v. Spaulding Rehab. Hosp. Corp., 2016 WL 1125940 (Mass. Super. 2016); Thomas v. Whitcomb, No. 22-CV-10356, 2025 WL 863058, at *11 (D. Mass. Mar. 19, 2025) (quoting Ferguson v. Host Int'l, Inc., 53 Mass. App. Ct. 96 (2001)).

On the Court's review, the Handbook's disclaimer is clear and conspicuous, rendering its terms unenforceable.  "Whether a written disclaimer is conspicuous is a matter of law." Farrell v. Mass. Eng'g Co., No. 95617, 1999 WL 1336433 (Mass. Super. Jan. 20, 1999) (discussing warranty disclaimers in commercial contracts).  A disclaimer is "conspicuous" when it is "so written that a reasonable person against whom it is to operate ought to have noticed it," such as if it has "[a] printed heading in capitals," is written in type face that is "larger or [in] other contrasting type or color," or is in a visible location. Hunt v. Perkins Mach. Co., Inc., 352 Mass. 535, 539-40 (1967); Mass. G.L. c. 106, § 1-201(10); Bos. Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F. Supp. 363, 376 (D. Mass. 1991).

Applying these factors, the Handbook's disclaimer is visually conspicuous.  The text itself states, in relevant part and as bolded in the original:

> The Bentley University Board of Trustees reserves the right to modify or amend curricula, and change or modify aspects of university operations, as well as increase tuition and other charges without notice.  Policies and regulations may be amended from time to time by action of the responsible bodies or persons without notice.  The information contained in this student handbook was complete and accurate as of August 2024.  Changes will be sent directly to students via email.

8

> **This handbook is not intended to be, and is not, a contract between the university and its students.**

[Dkt. 16-8 at 12]. In stating that it "is not intended to be, and is not, a contract between the university and its students," the Handbook expressly and unambiguously disclaims the intent to form enforceable contractual terms. As to its visual characteristics, the text on the page is written in a standard font size, and the page contains only half a page of text, rendering the disclaimer reasonably legible. Moreover, it is located near the beginning of the Handbook, on page 11 of 111, rather than buried at the end. The title, "Disclaimer," is written in large, blue font at the top of the page. Taken together, a reasonable person would have noticed the disclaimer, and the Court finds unpersuasive Plaintiff's argument that it is "fine print." See, e.g., Whitcomb, 2025 WL 863058, at *27 (granting summary judgment in favor of the school where student handbook disclaimer was located on last page, in bold font, and in standalone paragraph); Durbeck, 547 F. Supp. 3d at 147-48 (finding student academic catalog unenforceable where disclaimer was first sentence on webpage); Finnegan v. Mass. Coll. of Pharm. & Health Scis., No. 23-CV-12997, 2024 WL 4772299, at *21-22 (D. Mass. Nov. 13, 2024) (dismissing breach-of-contract claims based on student handbook that contained disclaimer). Accordingly, Plaintiff's claims that Defendant breached the Handbook's terms fail as a matter of law.[4] Plaintiff's breach-of-contract claim is thus dismissed.

### B.   Count 2: Basic Fairness/Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff next asserts that Defendant breached the covenant of good faith and fair dealing

---

[4] Plaintiff argues that the Court should apply a standard of "reasonable expectations" to their breach-of-contract claim. See Doe v. Stonehill Coll., Inc., 55 F.4th 302, 316 (1st Cir. 2022). However, that standard applies to the interpretation of contractual terms, which presupposes the existence of a contract. See id. Here, because the Court concludes that the Handbook disclaims the formation of a contract, the Court need not address the issue of interpretation.

9

by conducting the hearing in an unfair and biased manner.  Defendant contends that the Board's decision to expel Plaintiff was rational and based on the record.  The Court finds that, at the pleading stage, Plaintiff has alleged sufficient facts to survive dismissal.

The covenant of good faith and fair dealing is "imposed on every contract by Massachusetts law," including, as relevant here, implied contracts between students and universities. Sonoiki v. Harv. Univ., 37 F.4th 691, 715 (1st Cir. 2022).  In the context of student disciplinary proceedings, the covenant is also known as the duty of basic fairness. Doe v. Trs. of Bos. Coll., 892 F.3d 67, 87-88 (1st Cir. 2018); see also Doe v. Stonehill Coll., Inc., 55 F.4th 302, 338 (1st Cir. 2022).  Under this duty, when a school conducts a student disciplinary proceeding, it must do so "with basic fairness." Cloud v. Trs. of Bos. Univ., 720 F.2d 721, 724-25 (1st Cir. 1983) (citing Coveney v. Pres. & Trs. of Coll. of Holy Cross, 388 Mass. 16, 20 (1983)). Specifically, a school may not arbitrarily or capriciously dismiss a student or do so in bad faith. Driscoll v. Bd. of Trs. of Milton Acad., 70 Mass. App. Ct. 285, 295 (2007).  However, school disciplinary proceedings need not afford students all rights guaranteed under federal due process or in court proceedings. Doe v. Trs. of Bos. Coll., 942 F.3d 527, 533-36 (1st Cir. 2019) (citing Coveney, 388 Mass. at 21-22); Schaer v. Brandeis Univ., 432 Mass. 474, 481-82 (2000).  The scope of judicial review of school disciplinary decisions is narrow, and courts may reverse only where the decision "lacks any rational explanation" or is a "substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Doe v. Superintendent of Schs. of Stoughton, 437 Mass. 1, 5-6 (2002); Doe v. Brown Univ., 209 F. Supp. 3d 460, 472 (D.R.I. 2016) (quoting Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985).

Here, taking all well-pleaded factual allegations as true and indulging all reasonable

inferences in Plaintiff's favor, Plaintiff has pleaded sufficient facts supporting that Defendant breached the duty of basic fairness. It is undisputed that Plaintiff was a student at Bentley University at the time of the alleged breach, establishing a contractual relationship between the Parties and giving rise to Defendant's duty of basic fairness.[5] See Mangla, 135 F.3d at 83 (holding that the student-university relationship is fundamentally "contractual in nature"). Plaintiff plausibly alleges that Defendant breached this duty by failing to provide sufficient notice of the charges against him, particularly with respect to psychological harassment. The pre-hearing packet did not describe the conduct underlying each charge, instead containing only an unelaborated list of charges and a timeline of events. With only a "vague and open-ended charge" that he had psychologically harassed someone, Plaintiff could not reasonably be expected to identify appropriate witnesses, prepare arguments and responses to questions, or otherwise prepare his defense. See Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 603 (D. Mass. 2016) (finding breach of duty of fairness where school, "having informed [student] of the formal charge, refus[ed] to provide him with the specific factual conduct alleged to have given rise to the charge"); Doe v. W. New Eng. Univ., 228 F. Supp. 3d 154, 175 (D. Mass. 2016) (holding that insufficient notice of charged misconduct in student disciplinary proceeding violates basic fairness). The events at issue were not single and isolated—they involved at least eight other students and multiple Venmo transactions over the course of several months. As alleged by Plaintiff, the events primarily involved consensual interactions; as a result, the purported psychological harassment and victims were not readily apparent from the face of the charge.

---

[5] To the extent Plaintiff bases his claim on the Handbook specifically, that argument fails. Because the Handbook does not constitute a contract, no implied covenant can arise from its terms. See Finnegan, 2024 WL 4772299, at *10.

Under such circumstances, a list of formal charges and general timeline of events are too vague to constitute sufficient notice, particularly as psychological harassment was the only charge against Plaintiff that permitted a sanction of expulsion.  Thus, the Court finds that Plaintiff has plausibly alleged that the lack of notice deprived him of a fair proceeding.[6]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motions to Strike are **GRANTED IN PART** and **DENIED IN PART**, and Bentley's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Count 1 (breach of contract) is dismissed, while Count 2 (basic fairness) remains. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant is directed to serve a responsive pleading within **fourteen (14) days** of this Order.

**SO ORDERED.**

Dated: July 6, 2026                                    /s/ Angel Kelley
                                                       Hon. Angel Kelley
                                                       United States District Judge

---

[6] This case is distinguishable from Finnegan v. Massachusetts College of Pharmacy and Health Sciences, No. 23-CV-12997, 2024 WL 4772299 (D. Mass. Nov. 13, 2024), in which another session of this court recently dismissed a graduate student's basic fairness claim.  There, the student challenged his academic dismissal from a graduate program for failing classes, contending that the university failed to provide him a hearing prior to dismissal and unfairly refused to award him transfer credit for a letter grade he received from a different university. Id. at *8-9.  The court found that nothing in the university's student handbook or otherwise required the university to take such actions. Id. at *9.  Here, by contrast, Plaintiff has adequately demonstrated that both case law and the Handbook require Bentley to provide fair notice, creating a reasonable expectation that Bentley would provide adequate facts regarding Plaintiff's psychological harassment charge prior to his student conduct hearing. [See Dkt. 1 ¶¶ 96-102]; Doe v. Brandeis Univ., 177 F. Supp. 3d at 603; Doe v. W. New England Univ., 228 F. Supp. 3d at 175.